11 FOIL, Judge,
dissenting.
I respectfully dissent.
I respectfully dissent, believing the judge committed manifest error in finding Dr. Jones’ discharge instructions to be inadequate. Although the propriety of Dr. Jones’, decision not to take Mr. Samuel back into surgery after the two bleeding episodes on April 3rd is not at issue in this case, the evidence relating to that decision has direct bearing on the adequacy of the discharge instructions. The trial judge believed that Dr. Jones was negligent for failing to warn Mr. Samuel that he should not be left alone at any. time after his discharge from the hospital. Although Dr. Hudson did testify that it was below the standard of care to not issue this warning to Mr. Samuel, the factual basis on-which this opinion was made "was refuted at trial and was very clearly rejected by the trial judge in reaching his decision regarding Dr. Jones’ failure.to return Mr. Samuel to surgery.
Dr. Hudson testified that he would advise a patient who had arterial bleeding or who was suspected of having experienced arterial bleeding, and who had not been returned to surgery, not to be left alone. He also added that if it was highly suspect that the patient would bleed again, he would warn the | ?,patient not to stay alone; however, if it was not highly suspect that the patient could bleed again, he would not issue this warning.
*49 The central dispute among the experts at trial was whether there was any indication that Mr. Samuel was bleeding from the arterial incision on April 3rd. Dr. Hudson testified that Dr. Jones should have suspected Mr. Samuel was bleeding from the artery and should have returned him to surgery to explore the source of the bleeding. Even defendants’ expert witness testified that if a vascular surgeon suspects a patient is bleeding from the brachial artery, the surgeon must take steps to explore the source of the bleeding, including doing an ultrasound and surgery if necessary to repair the artery.
Dr. Jones emphatically denied that there was any indication that Mr. Samuel was bleeding from the artery. Dr. Batson testified that Mr. Samuel did not experience arterial bleeding and there was no reason to suspect the artery as the source of Mr. Samuel’s bleeding incidents. The defendants showed that arterial bleeding is very difficult to control, presents the unique risk of bleeding to death in a short period of time and is life-threatening in nature. However, in Mr. Samuel’s case, the bleeding incidents were stopped with the application of simple pressure in a relatively short time, and Mr. Samuel exhibited no sign of distress such as an increased pulse rate, heart rate or sweating that would be indicative of a life-threatening bleeding episode.
In finding no error in Dr. Jones’ decision to treat the bleeding incidents with observation rather than a return to surgery, the trial judge specifically noted that each of the bleeding episodes were stopped relatively quickly, Mr. Samuel did not appear to be in any distress, received his dialysis treatment without incident and appeared to be recovering relatively well from the surgery. Thus, the judge clearly rejected the factual basis upon which Dr. Hudson’s opinion was based.
Furthermore, the evidence did not establish it was highly suspected that Mr. Samuel would bleed again after returning home. Dr. Hudson stated that infection in the arm could compromise the incision and cause bleeding to occur. However, the evidence showed that there was nothing to cause Dr. |sJones to suspect the artery itself may be infected. Dr. Jones viewed the artery during the operation and saw that it was not infected; Mr. Samuel was on antibiotics, his temperature was not elevated and there was no redness around the wound area. Mr. Samuel was observed in the hospital for 60 hours following the last bleeding incident without a further episode. As the judge noted, he appeared to be recovering well from the surgery. According to Dr. Batson, all of these factors would lead a surgeon to anticipate that the prior bleeding problems had been resolved.
As the very facts upon which Dr. Hudson’s opinion was based were rejected by the judge and were not established at trial, there is no reasonable basis in the record to support the judge’s acceptance of Dr. Hudson’s testimony. Thus, I believe the trial judge committed manifest error in finding the standard of care dictated that Mr. Samuel be warned not to stay alone.
Second, the judge found the instructions deficient in that Mr. Samuel was not warned about the seriousness of a potential bleeding episode. Apparently, this decision was based on Dr. Hudson’s testimony that Mr. Samuel should be advised to treat any bleeding (except for a small amount of ooze around the wound) as an emergency for which professional help should be sought. Dr. Hudson explained that as Mr. Samuel had already had two significant bleeding incidents in the hospital, he would advise him that if any bleeding approached anything of that nature, to treat it as an extreme emergency and seek professional help.
However, Dr. Hudson was not aware in rendering his opinion that Mr. Samuel and his wife had taken classes on dialysis treatment at the VA Hospital in New Orleans when the access grafts were implanted in Mr. Samuel’s arms. Mrs. Samuel testified *50 that at the classes, they were informed of what to do in the case of bleeding.
Also, the evidence established that, unfortunately, susceptibility to prolonged bleeding is a fact of life every dialysis patient must face because their blood cells are not working correctly. Dr. Jones instructed Mr. Samuel to telephone if there were any problems. Clearly, bleeding in a dialysis patient |4presents a problem. The record does not reasonably support the conclusion that Dr. Jones had to additionally instruct Mr. Samuel to treat bleeding seriously or that bleeding could be serious. Mr. Samuel was aware of his condition, he had experience with numerous access surgical procedures, he was instructed previously on bleeding and he had just experienced two prolonged bleeding incidents in the hospital. As the majority correctly observes, and the record clearly establishes, Mr. Samuel should have known that he needed to seek medical treatment after he experienced the post-discharge bleeding incidents. Dr. Jones did not need to advise Mr. Samuel about something Mr. Samuel knew or should have known by the very nature of his condition, and his failure to do so is not a breach of the standard of care. Despite having two bleeding episodes after being discharged from the hospital, Mr. Samuel failed to call his doctor or any other medical professional to report the bleeding problems.
The other alleged deficiencies identified by Dr. Hudson in the discharge instructions were obviously rejected by the trial judge. Dr. Hudson testified that it was below the standard of care not to ensure family members were present at the discharge. However, there is nothing to indicate that Mr. Samuel was not capable of understanding the instructions given by Dr. Jones. Instead, he was alert at the time and had significant prior experience with graft procedures. Dr. Hudson also suggested that Dr. Jones should have investigated Mr. Samuel’s home life and the availability of medical care in the area. Apparently, the judge did not believe the standard of care imposed a burden on physicians to make these inquiries.
Accordingly, I believe the conclusion that Dr. Jones’ discharge instructions were inadequate is not reasonably supported by the record, and that finding is manifestly erroneous.